UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| JONATHAN R. BURRS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED TECHNOLOGIES CORPORATION, and WALTER KIDDE PORTABLE EQUIPMENT, INC.,<br><br>Defendants. | Case No. 1:18-cv-00491-CCE-LPA |

**DEFENDANTS' MOTION FOR SANCTIONS FOR
PLAINTIFF'S VIOLATION OF RULE 11(b)(2) AS TO HIS COMPLAINT**

Defendants United Technologies Corporation ("UTC") and Walter Kidde Portable Equipment, Inc. ("Walter Kidde"), by their attorneys and pursuant to Fed. R. Civ. P. 11(c) and LR 7.3 and 11.1(a), hereby move the Court for an order sanctioning Plaintiff Jonathan Burrs for pursuing claims that he knows or should know are not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law. Specifically, Plaintiff's Complaint and subsequent First Amended Complaint in this action raise claims essentially identical to those dismissed by this Court in two previous cases against Walter Kidde. By doing so, notwithstanding his pro se status, Plaintiff has violated Fed. R. Civ. P. 11(b)(2). Despite Defendants' efforts to avoid the need to file the present Motion for Sanctions, Plaintiff not only refused to withdraw his offending papers, he filed an amended complaint that the Court determined was "identical or virtually identical to the

51788154v.1

original complaint." (*See* First Amended Complaint ("FAC"), Doc. No. 20; see also Doc. No. 21.) The Court recently dismissed Plaintiff's First Amended Complaint with prejudice.[1]

Defendants respectfully move that the Court fashion a remedy "to deter repetition of the conduct" described below, including assessment of fees and costs against Plaintiff and entry of an order enjoining Plaintiff from pursuing any other claims against Defendants based on the events described in the First Amended Complaint and the complaints from Plaintiff's two prior lawsuits in this Court, *Burrs v. Walter Kidde Portable Equipment, Inc.*, No. 1:16-cv-01018-CCE-LPA (the "SOX Case") and *Burrs v. Walter Kidde Portable Equipment, Inc.*, Case No. 1:16-cv-01149-CCE-LPA (the "Title VII Case") (a case in which the Court ordered monetary sanctions against Plaintiff).[2] In support of their motion, Defendants state as follows:

### The SOX Case

1. On August 1, 2016, Plaintiff filed his complaint in the SOX Case alleging that Walter Kidde subjected him to unlawful retaliation as a result of his purported protected activity under the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514. (*See* SOX Case, Doc. No. 1, the "SOX Complaint.") The allegations in the SOX Complaint spanned

---

[1] See Doc. No. 23.

[2] To date, Plaintiff has not remitted payment to Walter Kidde for the $3,885.75 in fees and court costs the Court awarded in the Title VII Case. (Title VII Case, Text Order dated Dec. 14, 2017, and Doc. No. 67.)

virtually the entire period of Plaintiff's employment with Walter Kidde, from May 2014 until November 2015. (*Id.*)

2. After answering the SOX Complaint, Walter Kidde moved for judgment on the pleadings and the parties fully briefed their positions. (SOX Case, Doc. Nos. 11, 22 (Walter Kidde's briefs); Doc. No. 18 (Plaintiff's brief).)

3. On November 15, 2016, District Judge Catherine C. Eagles granted Walter Kidde's motion and dismissed the SOX Case in full. (SOX Case, Doc. No. 23.)

4. Plaintiff appealed Judge Eagles' Order to the United States Court of Appeals for the Fourth Circuit (the "SOX Appeal"). On September 13, 2017, the Court of Appeals adopted Judge Eagles' reasoning and affirmed in a per curiam opinion. *Burrs v. Walter Kidde Portable Equipment, Inc.,* 697 Fed. App'x 195 (4th Cir. 2017). The Court of Appeals subsequently denied Plaintiff's petition for rehearing and rehearing en banc. (SOX Case, Doc. No. 30.) Plaintiff filed an untimely petition for a writ of certiorari to the United States Supreme Court, which was not accepted. (*See* Title VII Case, Doc. No. 56-2.)

5. By virtue of Judge Eagles' Order dismissing the SOX Complaint, which was affirmed on appeal, the SOX Case has been finally adjudicated on the merits. "Unless the dismissal order states otherwise, [an involuntary dismissal] except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 [] operates as an adjudication on the merits." Fed. R. Civ. P. 41(b). This includes judgments on the pleadings pursuant to Fed. R. Civ. P. 12(c). *See Chandler v. Forsyth Tech. Comm. Coll.*, 294

F.Supp.3d 445, 452 (M.D.N.C. 2018) (citing 5C Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1372 (3d ed. 2017) ("A grant of a motion under Federal Rule 12(c) for judgment on the pleadings constitutes a final judgment on the merits of the controversy within the meaning of Rule 54.")).

**The Title VII Case**

6. On September 16, 2016, Plaintiff filed his complaint in the Title VII Case alleging that Walter Kidde discriminated against him because of his age, disability, gender, and race/color, subjected him to a hostile work environment, and retaliated against him for complaining about such treatment. (*See* Title VII Case, Doc. No. 1, the "Title VII Complaint.") The allegations in the Title VII Complaint also spanned virtually the entire period of Plaintiff's employment with Walter Kidde, from May 2014 until November 2015, and were based on many of the same underlying factual allegations as the SOX Case. (*Id.*)

7. After answering the Title VII Complaint, Walter Kidde moved for judgment on the pleadings and the parties fully briefed their positions. (*See* Title VII Case, Doc. Nos. 16, 19 (Walter Kidde's briefs); Doc. Nos. 18, 21 (Plaintiff's brief and supplement).)

8. On April 13, 2017, Judge Eagles granted Walter Kidde's motion as to all of Plaintiff's claims except his claim for creation of a hostile work environment leading to constructive discharge in retaliation for complaints about alleged race and gender discrimination. (Title VII Case, Doc. No. 22.) Judge Eagles found that Plaintiff "alleged no facts beyond his own opinion that the defendant discriminated against him based on his [race, gender, age, and disability]." (*Id.* at 1.) In addition, Plaintiff had not alleged "any

4
51788154v.1

Case 1:18-cv-00491-CCE-LPA   Document 25   Filed 11/06/18   Page 4 of 17

facts to support his claim that [his negative performance review, alleged failure to promote,] and his termination were caused by animus towards one of his race, gender, age, or disability." (*Id.* at 2.) Furthermore, Plaintiff alleged "no facts to support his conclusory assertion that the hostile work environment was a result of race, gender, age, or disability." (*Id.*)

9. On November 27, 2017, Walter Kidde moved for summary judgment as to Plaintiff's remaining claims in the Title VII Case and the parties fully briefed their positions. (*See* Title VII Case, Doc. Nos. 49, 50, 56 (Walter Kidde's briefs); Doc. Nos. 52-55 (Plaintiff's brief).)

10. On March 30, 2018, Judge Eagles granted Walter Kidde's motion and dismissed the Title VII Case with prejudice. (Title VII Case, Doc. Nos. 63, 64.) Judge Eagles found that, "[a]s to the events occurring after June 11, 2015 . . . [Plaintiff] has not shown a hostile work environment."[3] (Title VII Case, Doc. No. 63 at 5.) Proceeding to Plaintiff's attempt to invoke the continuing violation doctrine, Judge Eagles then held that "even considering all of the post-October 14, 2014, acts, they are insufficient to constitute a hostile work environment." (*Id.* at 6.)

11. Judge Eagles also ruled that Plaintiff had not shown a causal link between his purported protected activity and any allegedly retaliatory acts. (*Id.* at 7.)

---

[3] Judge Eagles also noted that Plaintiff had not "directed the Court's attention to any direct evidence of discrimination. (*Id.* at 5, n.3.)

12. Finally, Judge Eagles ruled that Walter Kidde had offered legitimate non-discriminatory reasons for its decisions specifically as to Plaintiff's "claims based on a failure to promote and a bad performance review" and, in response, Plaintiff had failed to rebut those reasons. (*Id.* at 6, n. 4.) Likewise, as to the other acts on which Plaintiff purported to rely for his remaining claims in the Title VII Case (including an email addressing his attendance and the January 2015 meetings and August 2015 correspondence discussing Plaintiff's disruptive communications), Judge Eagles held that Plaintiff had not rebutted Walter Kidde's legitimate non-discriminatory reasons for its actions or otherwise established that those proffered reasons were a pretext. (*Id.*, at 8-9.)

13. Summing up her opinion granting summary judgment in favor of Walter Kidde on all of Plaintiff's claims, Judge Eagles ruled that: "No reasonable jury would or could conclude that Mr. Burrs has established a prima facie case of retaliation-by-hostile-work-environment leading to constructive discharge" and Plaintiff "has not rebutted Kidde's legitimate, non-discriminatory reasons for the Kidde supervisors' various acts." (*Id.* at 10.)

14. Plaintiff did not appeal any of the Court's rulings in the Title VII Case.

15. By virtue of Judge Eagles' Orders dismissing with prejudice all of Plaintiff's claims in the Title VII Case, which Plaintiff did not appeal, the Title VII Case has been finally adjudicated on the merits. *See* Fed. R. Civ. P. 41(b); *Chandler, supra*.

**Plaintiff's Current Claims**

16. On June 8, 2018, Plaintiff filed the present lawsuit alleging that the Defendants discriminated against him under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981"). (Doc. No. 1, the "Complaint.") In the Complaint (and subsequent First Amended Complaint),[4] Plaintiff merely repeats and embellishes his allegations against Walter Kidde from the SOX Complaint and the Title VII Complaint.[5]

17. Plaintiff specifically alleges that he was employed by Walter Kidde and directs nearly all of his allegations at "Defendant" or "Defendant-Kidde." He does not provide any basis for his purported claims against UTC -- other than that it is Walter Kidde's parent company and allegedly "sanctioned" Walter Kidde's actions. (*See, e.g.,* FAC at 1, 16, and ¶¶ 11, 39, 65.) In the SOX Case and the Title VII Case, as here, Plaintiff identified Walter Kidde as a "Subsidiary of UTC Building and Industrial Systems," but in those cases he did not name UTC as a defendant. (FAC ¶ 11; SOX Compl. ¶ 5; Title VII Compl. ¶ 6.)

---

[4] Because the First Amended Complaint now is the operative complaint in this action, Defendants cite to the First Amended Complaint rather than the original Complaint. As the Court observed, however, the two are virtually identical and, in fact, Plaintiff's allegations use the same paragraph numbers in both.

[5] Incredibly, the opening paragraph of the First Amended Complaint specifically alleges "hostile work environment leading to constructive discharge," the very claim on which the Court granted summary judgment in the Title VII Case. (FAC at 1.)

18. Plaintiff's allegations in the First Amended Complaint are based on the identical operative facts alleged to have taken place between May 2014 and November 2015 on which he relied in the SOX Case and the Title VII Case. For example, Plaintiff alleges that Walter Kidde: changed his job title (FAC ¶¶ 15, 17; Title VII Compl. ¶ 10); denied him access to software (FAC ¶¶ 16-20; Title VII Compl. ¶¶ 11-13); instigated an ethics investigation against him (FAC ¶¶ 24; SOX Compl. ¶ 20; Title VII Compl. ¶ 15); ambushed him during an unscheduled meeting (FAC ¶ 25; SOX Compl. ¶ 21; Title VII Compl. ¶ 16); referred to him as a "poor communicator" and "arrogant" (FAC ¶ 31; SOX Compl. ¶ 29; Title VII Compl. ¶ 18); scrutinized his attendance (FAC ¶¶ 32-35; SOX Compl. ¶¶ 30-31; Title VII Compl. ¶¶ 19-22); issued him a "negative performance review" (FAC ¶¶ 41-50; SOX Compl. ¶¶ 35-36; Title VII Compl. ¶¶ 25-27); did not consider him for an "IT Leader" position (FAC ¶¶ 51, 57-62; Title VII Compl. ¶ 29); sent email correspondence that he characterizes as publicly excoriating and berating him (FAC ¶¶ 71-72; SOX Compl. ¶¶ 39-40; Title VII Compl. ¶¶ 31-32); and caused him to involuntarily resign because of alleged discrimination, harassment, and retaliation (FAC ¶¶ 72-73, 79-80; SOX Compl. ¶¶ 40-45; Title VII Compl. ¶¶ 32-35).

19. Plaintiff's blatant attempt to resurrect claims this Court already has dismissed with prejudice is further demonstrated by the First Amended Complaint's Prayer for Relief, which is a near verbatim recitation of the Prayer for Relief in the Title VII Complaint. (*Compare* Compl. at 17-18 with Title VII Comp. at 17-18.)

20. Under the doctrine of claim preclusion, or res judicata, "a prior judgment bars the relitigation of claims that were raised or could have been raised in the prior litigation." *Serna v. Holder*, 559 Fed. App'x 234, 236-37 (4th Cir. 2014) (citing *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999)). A prior claim precludes a later one if three conditions are satisfied: (1) the prior judgment was final and on the merits; (2) the parties are identical, or in privity, in the two actions; and, (3) the claims in the new matter are based upon the same transaction or series of transactions as the claim resolved by the prior judgement. *Id*.

21. Because all of the claims asserted in the First Amended Complaint are based on the same alleged actions involved in the SOX Case and the Title VII Case, between the same parties, and that this Court previously dismissed in final judgments on the merits, those claims are barred by the doctrine of res judicata. *Id*. And, to the extent Plaintiff may argue that the First Amended Complaint asserts claims he did not raise in the SOX Case or the Title VII Case, any such claims arise out of the same core of operative facts and could, and should, have been brought in those lawsuits; therefore, those claims also are barred by res judicata. *Serna*, 559 Fed. App'x at 238-39.

22. By signing and filing his Complaint and First Amended Complaint with the Court, Plaintiff certified that all claims and legal contentions in the those filings are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). In fact, both

9

51788154v.1

Case 1:18-cv-00491-CCE-LPA Document 25 Filed 11/06/18 Page 9 of 17

the Complaint and the First Amended Complaint contain a "Certification" as to Plaintiff's purported compliance with the requirements of Rule 11. (Compl. at 18; FAC at 17.)

23. On August 14, 2018, with the hope of avoiding undue expense in responding to a frivolous lawsuit, Defendants' counsel sent a letter to Plaintiff asking him to voluntarily dismiss the Complaint. In that letter, counsel expressed the position that Plaintiff's claims against the Defendants are barred by res judicata and collateral estoppel, and explained those doctrines by quoting and attaching illustrative case law. Counsel also quoted Fed. R. Civ. P. 11, stated that Rule 11 sanctions could be imposed against Plaintiff if the Court found that he filed his Complaint in violation of Rule 11, and included a collection of such cases for Plaintiff to review independently. Counsel asked Plaintiff to dismiss the Complaint or otherwise respond to counsel's letter by September 4, 2018. Counsel also served on Plaintiff a copy of a Motion for Sanctions in substantially the same form as the present motion.

24. Plaintiff responded to Defendants' letter in an e-mail message dated September 4, 2018. In that message, he claimed that the Court's dismissal of the SOX Case and the Title VII Case "do not meet the Supreme Court standard of full and fair opportunity to litigate therefore a collateral estoppel affirmative defense is not applicable." Plaintiff also claimed "a pattern by this court to act outside well established caselaw and specific directions from the Supreme Court . . ." He further made unfounded allegations that Walter Kidde committed perjury and did so with the knowledge and participation of Defendants' counsel and closed his message with a barely veiled threat to seek disbarment

10

of counsel. Plaintiff did not directly respond to any of the points Defendants' counsel raised in the proposed Motion for Sanctions, nor did he withdraw his Complaint.

25. On September 14, 2018, Defendants filed their Motion to Dismiss Plaintiff's Complaint asserting res judicata, collateral estoppel, and failure to state a claim under Rule 12(b)(6) as separate and independent bases for dismissal. (Doc. No. 16) Instead of filing an opposition to Defendants' motion (which would have been due on October 5, 2018), on October 3, 2018, Plaintiff filed his First Amended Complaint. (Doc. No. 20.) In the First Amended Complaint, Plaintiff removed references to sex and gender discrimination and added some passing references to UTC, but made no other substantive revisions to address any of the issues Defendants raised in their letter to Plaintiff and accompanying proposed Motion for Sanctions or in their Motion to Dismiss. (*Id*.) The Court subsequently ruled that "[t]he First Amended Complaint . . . appears to be identical or virtually identical to the original complaint . . . and the Court therefore will not require defendants to resubmit its motion to dismiss . . . which remains pending and which the Court will treat as directed towards the First Amended Complaint." (Doc. No. 21.) The Court allowed Defendants an opportunity to supplement their motion to dismiss (which they opted not to do, given the lack of any substantive changes from the original Complaint) and set the deadline for Plaintiff's opposition to Defendants' Motion to Dismiss as October 22, 2018. (*Id*.) Plaintiff failed to file any opposition to Defendants' Motion. On November 2, 2018, the Court dismissed Plaintiff's First Amended Complaint **with prejudice**. (Doc. No. 23.)

11
51788154v.1

Case 1:18-cv-00491-CCE-LPA   Document 25   Filed 11/06/18   Page 11 of 17

26. Having forced Defendants to re-litigate claims this Court already has rejected (twice), Plaintiff's conduct warrants sanctions. As explained in counsel's letter Plaintiff, federal courts in North Carolina and around the country have imposed the same or harsher sanctions than those sought by Defendants under similar circumstances:

a. In *Harr v. State*, the plaintiff's first action against certain of the defendants was dismissed for failure to state a claim and that dismissal was upheld on appeal. Plaintiff then brought "essentially identical claims" against those same defendants, among others. This Court entered an order stating that defendants in question need not respond to any future pleading or complaint filed by the plaintiff in this Court as to those defendants for which the operative facts related to events set forth in either the first or second complaint. *Harr v. State*, No. 1:13-cv-00673-CCE-JLW, 2014 WL 2212169, at * 6-10 (M.D.N.C. May 28, 2014), *aff'd* 558 Fed. App'x 285 (4th Cir. 2014), *cert denied* 136 S.Ct. 326 (2015).

b. In *Parrish v. Journigan*, the court ordered the pro se plaintiff to pay all of the defendant's attorney fees after observing that the plaintiff had "filed essentially the same lawsuit" previously and that "[t]he defendants have been forced to expend considerable time and money defending a lawsuit which the Fourth Circuit conclusively resolved against the plaintiff." *Parrish v. Journigan,* No. 90–280–CIV–5–BO, 1990 WL 276732, at *2 (E.D.N.C. Aug. 17, 1990).

c. In *Sanders v. Tyco Electronics Corp.*, the court enjoined the pro se plaintiff from suing the defendant after concluding that plaintiff's lawsuit was barred by res

judicata and instituted for the purpose of harassing the defendant. *Sanders v. Tyco Electronics Corp.,* 235 F.R.D. 315, 324-25 (W.D.N.C. 2006).

d. In *Ginther v. Provident Life & Cas. Ins. Co.*, the Second Circuit upheld an award of sanctions against a pro se plaintiff who had "been correctly informed . . . that his claims in this action were barred by res judicata" and who "nevertheless renewed the same substantive claims in a dilatory motion . . . ." *Ginther v. Provident Life & Cas. Ins. Co.,* 350 F. App'x 494, 496 (2d Cir. 2009).

e. In *Fermin v. National Home Life Assurance Co.*, the Fifth Circuit upheld a sanctions award of $5,924.04 after noting that "[plaintiff's] persistence in litigating this lawsuit, even after he was put on notice that res judicata barred his lawsuit, clearly violates Rule 11." *Fermin v. National Home Life Assurance Co.,* No. 93-8645, 1994 WL 24922, at *2 (5th Cir. Jan. 14, 1994).

f. In *Patterson v. Aiken*, the Eleventh Circuit upheld an award of $4,947 in attorney's fees against a pro se litigant on the grounds that his claim was "a 're-hash' of claims made in prior litigation and . . . that '[a] man of [plaintiff's] education, given a reasonable amount of time in a law library, could determine that once a judgment has been entered one cannot file another lawsuit to object to the conduct of the first.'" *Patterson v. Aiken* 841 F.2d 386, 387 (11th Cir. 1998).

The Court already imposed monetary sanctions and costs against Plaintiff in the Title VII case, which remain unpaid. (*See* Title VII Case, Text Order December 14, 2017,

13

and Doc. 67.) This apparently was not a sufficient deterrent to prevent Plaintiff from continuing his course of frivolous litigation against Defendants based on the same set of facts. As a result, while Defendants respectfully request that the Court assess attorneys' fees and costs against Plaintiff, they primarily seek to enjoin Plaintiff from pursuing any other claims against Defendants based on the events described in the Complaint, the First Amended Complaint, the SOX Complaint, or the Title VII Complaint (in whatever manner the Court deems sufficient to deter repetition of such conduct), and an award of such other and further relief as the Court deems just and proper. A proposed Order is attached for the Court's consideration.

Respectfully submitted,

SEYFARTH SHAW LLP

By: s/ *Frederick T. Smith*
    Frederick T. Smith
    North Carolina Bar No. 45229
    SEYFARTH SHAW LLP
    6000 Fairview Road, Suite 1200
    Charlotte, North Carolina 28210
    Telephone: (404) 885-1500
    Facsimile: (404) 892-7056

    Benjamin D. Briggs
    Georgia Bar No. 081902
    bbriggs@seyfarth.com
    Thomas G. Reynolds IV
    Georgia Bar No. 601898
    treynolds@seyfarth.com
    SEYFARTH SHAW LLP
    1075 Peachtree Street, N.E., Suite 2500
    Atlanta, Georgia 30309-3958
    Telephone: (404) 885-1500
    Facsimile: (404) 892-7056

    *Counsel for Defendants*
    *United Technologies Corporation and*
Date: November 6, 2018    *Walter Kidde Portable Equipment, Inc.*

## Certification of Compliance

The undersigned certifies that, in accordance with Fed. R. Civ. P. 11(c)(2), Defendants' counsel served on Plaintiff a copy of a Motion for Sanctions in substantially the same form as the present motion more than 21 days before filing this motion and Plaintiff has not withdrawn his Complaint.

## WORD COUNT CERTIFICATION

This motion, submitted in 13 point Times New Roman type, contains fewer than 6,250 words, including the body, headings, and footnotes. (Word count: 3,464)

s/ *Frederick T. Smith*  
Frederick T. Smith  
Counsel for Defendants

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| JONATHAN R. BURRS,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED TECHNOLOGIES CORPORATION, and WALTER KIDDE PORTABLE EQUIPMENT, INC.,<br><br>    Defendants. | Case No. 1:18-cv-00491-CCE-LPA |

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2018, the foregoing **DEFENDANTS' MOTION FOR SANCTIONS FOR PLAINTIFF'S VIOLATION OF RULE 11(b)(2) AS TO HIS COMPLAINT** was served on Plaintiff by overnight courier and electronic means addressed to the following:

> Jonathan R. Burrs, *pro se Plaintiff*
> 118 Pangborn Boulevard
> Hagerstown, Maryland 21740
> Jburrs1715@aol.com

> *s/ Thomas G. Reynolds IV*
> Counsel for Defendants
> United Technologies Corporation and
> Walter Kidde Portable Equipment, Inc.

51788154v.1