UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| JONATHAN R. BURRS,<br><br>                Plaintiff,<br><br>v.<br><br>UNITED TECHNOLOGIES<br>CORPORATION, and WALTER KIDDE<br>PORTABLE EQUIPMENT, INC.,<br><br>                Defendants. | Case No. 1:18-cv-00491-CCE-LPA |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR SANCTIONS FOR
<u>PLAINTIFF'S VIOLATION OF RULE 11(b)(2) AS TO HIS COMPLAINT</u>**

<u>**NATURE OF THE MATTER BEFORE THE COURT**</u>[1]

On June 8, 2018, Plaintiff Jonathan Burrs filed a third lawsuit against Defendants United Technologies Corporation ("UTC") and Walter Kidde Portable Equipment, Inc. ("Walter Kidde") based on factual allegations and asserting claims essentially identical to those this Court rejected in two previous cases against Walter Kidde.[2] Through this

---

[1] In recognition of Plaintiff's pro se status, the accompanying Motion contains a more comprehensive statement of facts and authorities than might otherwise be provided to a represented party. Through this detailed Motion, the Defendants hoped to avoid any surprise or prejudice for Plaintiff and to provide a meaningful opportunity for him to consider his position during the "safe harbor" period of Rule 11. For this reason, however, this memorandum is largely repetitive of the Motion itself.

[2] *Burrs v. Walter Kidde Portable Equipment, Inc.*, No. 1:16-cv-01018-CCE-LPA (the "SOX Case") and *Burrs v. Walter Kidde Portable Equipment, Inc.*, Case No. 1:16-cv-01149-CCE-LPA (the "Title VII Case").

lawsuit, Plaintiff thus pursued claims and contentions that he knew or should have known are not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law – warranting sanctions under Rule 11(b)(2). Despite Defendants' efforts to avoid the need to file the present Motion for Sanctions, Plaintiff not only refused to withdraw his offending papers, he filed an amended complaint that the Court determined was "identical or virtually identical to the original complaint." (*See* First Amended Complaint ("FAC"), Doc. No. 20; *see also* Doc. No. 21.)

Defendants, therefore, respectfully request that the Court impose the most stringent sanctions on Plaintiff to deter repetition of his baseless filings, to protect Defendants from being required to incur further expense defending against Plaintiff's frivolous and vexatious litigation, and to stop Plaintiff's unfounded attacks on the integrity of Defendants, their counsel, and this Court.

## RELEVANT FACTS FOR PURPOSES OF THIS MOTION

Plaintiff's Complaint and subsequent First Amended Complaint in this action assert the same litany of alleged acts of discrimination, harassment, and retaliation that he claims occurred during his employment with Walter Kidde between May 2014 and November 2015 that formed the basis of his two previous actions against Defendants. In that regard, his allegations are based on the identical operative facts on which he relied in the SOX Case and the Title VII Case -- both of which this Court dismissed. Because Defendants addressed those underlying factual allegations in detail in their Motion to Dismiss (Doc.

No. 16 at 5-7), here they will focus on the specific procedural facts that establish that Plaintiff knew or should have known the claims and contentions he asserted in his First Amended Complaint are not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law.

### The SOX Case

On August 1, 2016, Plaintiff filed his complaint in the SOX Case alleging that Walter Kidde subjected him to unlawful retaliation as a result of his purported protected activity under the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514. (*See* SOX Doc. 1, the "SOX Complaint.")[3] The allegations in the SOX Complaint spanned virtually the entire period of Plaintiff's employment with Walter Kidde, from May 2014 until November 2015. (*Id.*)

After answering the SOX Complaint, Walter Kidde moved for judgment on the pleadings and the parties fully briefed their positions. (SOX Docs. 11, 22 (Walter Kidde's briefs); Doc. No. 18 (Plaintiff's opposition).) On November 15, 2016, District Judge Catherine C. Eagles granted Walter Kidde's motion and dismissed the SOX Case in full. (SOX Doc. 23.) The United States Court of Appeals for the Fourth Circuit affirmed that decision, adopting Judge Eagles' reasoning. *Burrs v. Walter Kidde Portable Equipment,*

---

[3] For ease of reference, Defendants use the designations "SOX Doc." and "Title VII Doc." followed by the docket number from the associated case to refer to documents filed in the SOX Case and the Title VII Case. Copies of those documents are attached to Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Complaint as Exhibits A and B (Doc. Nos. 17-1 and 17-2).

*Inc.*, 697 Fed. App'x 195 (4th Cir. 2017), *reh'g denied*.[4] Plaintiff then filed a Petition for a writ of certiorari to the United States Supreme Court, which was determined to be untimely and was not accepted. (*See* Title VII Doc. 56-2.)

**The Title VII Case**

On September 16, 2016, Plaintiff filed his complaint in the Title VII Case alleging that Walter Kidde discriminated against him "on the basis of age, disability, gender, race/color, harassment, and retaliation." (*See* Title VII Doc. 1, the "Title VII Complaint.") These allegations also spanned virtually the entire period of Plaintiff's employment with Walter Kidde, from May 2014 until November 2015, and were based on many of the same underlying factual allegations as the SOX Case. (*Id.*)

After answering the Title VII Complaint, Walter Kidde moved for judgment on the pleadings and the parties fully briefed their positions. (*See* Title VII Docs. 16, 19 (Walter Kidde's briefs); Doc. Nos. 18, 21 (Plaintiff's brief and supplement).) On April 13, 2017, Judge Eagles granted Walter Kidde's motion as to all of Plaintiff's claims except his claim for creation of a hostile work environment leading to constructive discharge in retaliation for complaints about alleged race and gender discrimination. (Title VII Doc. 22.) Judge Eagles found that Plaintiff "alleged no facts beyond his own opinion that the defendant discriminated against him based on his [race, gender, age, and disability]." (*Id.* at 1.) In

---

[4] Except where specifically noted, copies of unreported cases cited in this memorandum are available in Exhibit C to Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Complaint (Doc. No. 17-3).

addition, Plaintiff had not alleged "any facts to support his claim that [his negative performance review, alleged failure to promote,] and his termination were caused by animus towards one of his race, gender, age, or disability." (*Id*. at 2.) Furthermore, Plaintiff alleged "no facts to support his conclusory assertion that the hostile work environment was a result of race, gender, age, or disability." (*Id*.)

After completing discovery, on November 27, 2017, Walter Kidde moved for summary judgment as to Plaintiff's remaining claims in the Title VII Case and the parties fully briefed their positions. (*See* Title VII Docs. 49, 50, 56 (Walter Kidde's briefs); Doc. Nos. 52-55 (Plaintiff's brief).) On March 30, 2018, Judge Eagles granted Walter Kidde's motion and dismissed the Title VII Case with prejudice. (Title VII Docs. 63, 64.) Judge Eagles found that, "[a]s to the events occurring after June 11, 2015 . . . [Plaintiff] has not shown a hostile work environment."[5] (Title VII Doc. 63 at 5.) Proceeding to Plaintiff's attempt to invoke the continuing violation doctrine, Judge Eagles then held that "even considering all of the post-October 14, 2014, acts, they are insufficient to constitute a hostile work environment." (*Id*. at 6.) Judge Eagles also ruled that Plaintiff had not shown a causal link between his purported protected activity and any allegedly retaliatory acts. (*Id*. at 7.) Finally, Judge Eagles ruled that Walter Kidde had offered legitimate non-discriminatory reasons for its decisions specifically as to Plaintiff's "claims based on a

---

[5] Judge Eagles also noted that Plaintiff had not "directed the Court's attention to any direct evidence of discrimination. (*Id*. at 5, n.3.)

failure to promote and a bad performance review" and, in response, Plaintiff had failed to rebut those reasons. (*Id*. at 6, n. 4.) Likewise, as to the other acts on which Plaintiff purported to rely for his remaining claims in the Title VII Case (including an email addressing his attendance and the January 2015 meetings and August 2015 correspondence discussing Plaintiff's disruptive communications), Judge Eagles held that Plaintiff had not rebutted Walter Kidde's legitimate non-discriminatory reasons for its actions or otherwise established that those proffered reasons were a pretext. (*Id*., at 8-9.)

Summing up her opinion granting summary judgment in favor of Walter Kidde on all of Plaintiff's claims, Judge Eagles ruled that: "No reasonable jury would or could conclude that Mr. Burrs has established a prima facie case of retaliation-by-hostile-work-environment leading to constructive discharge" and Plaintiff "has not rebutted Kidde's legitimate, non-discriminatory reasons for the Kidde supervisors' various acts." (*Id*. at 10.) Plaintiff did not appeal any of the Court's rulings in the Title VII Case.

**Plaintiff's Current Claims**

On June 8, 2018, Plaintiff filed the present lawsuit -- his third against Walter Kidde in less than two years -- under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981"), alleging that the Defendants discriminated against him on the basis of "race/color, sex, harassment, retaliation, intentional infliction of emotional distress, and hostile work environment leading to constructive discharge." (Doc. No. 1, the "Complaint.") In the Complaint (and subsequent

First Amended Complaint), Plaintiff merely repeated and embellished his allegations against Walter Kidde from the SOX Complaint and the Title VII Complaint.

This is apparent from the opening paragraph of the First Amended Complaint, in which Plaintiff specifically alleges "hostile work environment leading to constructive discharge," the same claim on which the Court granted summary judgment in the Title VII Case.[6] (*Compare* FAC at 1 with Title VII Doc. 63 at 1, 10.) The recycling of previous allegations continues throughout the First Amended Complaint. For example, Plaintiff alleges that Walter Kidde: changed his job title (FAC ¶¶ 15, 17; Title VII Compl. ¶ 10); denied him access to software (FAC ¶¶ 16-20; Title VII Compl. ¶¶ 11-13); instigated an ethics investigation against him (FAC ¶¶ 24; SOX Compl. ¶ 20; Title VII Compl. ¶ 15); ambushed him during an unscheduled meeting (FAC ¶ 25; SOX Compl. ¶ 21; Title VII Compl. ¶ 16); referred to him as a "poor communicator" and "arrogant" (FAC ¶ 31; SOX Compl. ¶ 29; Title VII Compl. ¶ 18); scrutinized his attendance (FAC ¶¶ 32-35; SOX Compl. ¶¶ 30-31; Title VII Compl. ¶¶ 19-22); issued him a "negative performance review" (FAC ¶¶ 41-50; SOX Compl. ¶¶ 35-36; Title VII Compl. ¶¶ 25-27); did not consider him for an "IT Leader" position (FAC ¶¶ 51, 57-62; Title VII Compl. ¶ 29); sent email correspondence that he characterizes as publicly excoriating and berating him (FAC ¶¶ 71-

---

[6] Because the First Amended Complaint is now the operative complaint in this action, Defendants cite to the First Amended Complaint rather than the original Complaint. As the Court observed, however, the two are virtually identical and, in fact, Plaintiff's allegations use the same paragraph numbers in both.

72; SOX Compl. ¶¶ 39-40; Title VII Compl. ¶¶ 31-32); and caused him to involuntarily resign because of alleged discrimination, harassment, and retaliation (FAC ¶¶ 72-73, 79-80; SOX Compl. ¶¶ 40-45; Title VII Compl. ¶¶ 32-35). The First Amended Complaint concludes with a Prayer for Relief that is a near verbatim recitation of the Prayer for Relief in the Title VII Complaint. (*Compare* FAC at 15-17 with Title VII Compl. at 17-18.)

Although Plaintiff purports to add UTC as a defendant, he does not provide any basis for his claims against UTC -- other than that it is Walter Kidde's parent company and allegedly "sanctioned" Walter Kidde's actions. (*See, e.g.,* FAC at 1, 16, and ¶¶ 11, 39, 65.) On the contrary, he repeatedly alleges that he was employed by Walter Kidde and directs nearly all of his allegations at "Defendant" or "Defendant-Kidde."[7] (*See, e.g.,* FAC at 1-2, and ¶¶ 12-17, 80 and *passim*.)

### **Defendants' Efforts to Avoid this Motion**

On August 14, 2018 (thirty-one days before Defendants' deadline to respond to Plaintiff's Complaint), with the hope of avoiding undue expense in responding to a frivolous lawsuit, Defendants' counsel sent a letter to Plaintiff asking him to voluntarily dismiss the Complaint. (Ex. A.) In that letter, counsel expressed the position that Plaintiff's claims are barred by res judicata and collateral estoppel and explained those doctrines by quoting and attaching illustrative case law. (*Id*. at 1-2.) Counsel also quoted

---

[7] In the SOX Case and the Title VII Case, as here, Plaintiff identified Walter Kidde as a "Subsidiary of UTC Building and Industrial Systems," but in those cases he did not name UTC as a defendant. (FAC ¶ 11; SOX Compl. ¶ 5; Title VII Compl. ¶ 6.)

Fed. R. Civ. P. 11, stated that Rule 11 sanctions could be imposed against Plaintiff if the Court found that he filed his Complaint in violation of Rule 11, and included a copy of Rule 11 and a collection of cases for Plaintiff to review. (*Id*. at 2-3.) Counsel asked Plaintiff to dismiss the Complaint or otherwise respond to counsel's letter by September 4, 2018 (21 days after the date of the letter). Counsel also served on Plaintiff a copy of a Motion for Sanctions in substantially the same form as the present motion. (*Id*.)

Plaintiff responded to Defendants' letter in an e-mail message dated September 4, 2018. (Ex. B.) In that message, he claimed that the Court's dismissal of the SOX Case and the Title VII Case "do not meet the Supreme Court standard of full and fair opportunity to litigate therefore a collateral estoppel affirmative defense is not applicable." (*Id*.) Plaintiff also claimed "a pattern by this court to act outside well established caselaw and specific directions from the Supreme Court . . ." (*Id*.) He further made unfounded allegations that Walter Kidde committed perjury and did so with the knowledge and participation of Defendants' counsel and closed his message with a barely veiled threat to seek disbarment of counsel. (*Id*. at 1-2) Plaintiff did not directly respond to any of the points Defendants' counsel raised in the proposed Motion for Sanctions, nor did he withdraw his Complaint.

### **Plaintiff Failed to Oppose Defendants' Motion to Dismiss.**

On September 14, 2018, Defendants filed their Motion to Dismiss Plaintiff's Complaint asserting res judicata, collateral estoppel, and failure to state a claim under Rule 12(b)(6) as separate and independent bases for dismissal. (Doc. No. 16) Instead of filing

51788373v.1

Case 1:18-cv-00491-CCE-LPA   Document 26   Filed 11/06/18   Page 9 of 20

an opposition to Defendants' motion (which would have been due on October 5, 2018), on October 3, 2018, Plaintiff filed his First Amended Complaint. (Doc. No. 20.) In that First Amended Complaint, Plaintiff removed references to sex and gender discrimination and added some passing references to UTC, but made no other substantive revisions to address any of the issues Defendants raised in their letter to Plaintiff and accompanying proposed Motion for Sanctions or in their Motion to Dismiss. (*Id*.) The Court subsequently ruled that "[t]he First Amended Complaint . . . appears to be identical or virtually identical to the original complaint . . . and the Court therefore will not require defendants to resubmit its motion to dismiss . . . which remains pending and which the Court will treat as directed towards the First Amended Complaint." (Doc. No. 21.) The Court allowed Defendants an opportunity to supplement their motion to dismiss (which they opted not to do, given the lack of any substantive changes from the original Complaint) and set the deadline for Plaintiff's opposition to Defendants' Motion to Dismiss as October 22, 2018. (*Id*.) Plaintiff failed to file any opposition to Defendants' Motion. On November 2, 2018, the Court dismissed Plaintiff's First Amended Complaint **with prejudice**. (Doc. No. 23.)

## ARGUMENT

### I. Plaintiff Knew or Should Have Known that the Contentions in His Complaint Were Substantively Frivolous and Procedurally Barred.

By signing and filing his Complaint and subsequent First Amended Complaint with the Court, Plaintiff certified that all claims and legal contentions in those filings are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or

10

51788373v.1

Case 1:18-cv-00491-CCE-LPA   Document 26   Filed 11/06/18   Page 10 of 20

reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). "By its explicit terms Rule 11 applies to a party . . . who is appearing pro se." *Moore v. Surles*, 673 F. Supp. 1398, 1401 (E.D.N.C. 1987); *see also*, Fed. R. Civ. P. 11(b) (". . . an attorney or unrepresented party certifies . . ."). And, in fact, both the Complaint and the First Amended Complaint contain a "Certification" as to Plaintiff's purported compliance with the requirements of Rule 11. (Compl. at 18; FAC at 17.)

Under the doctrine of claim preclusion, or res judicata, "a prior judgment bars the relitigation of claims that were raised or could have been raised in the prior litigation." *Serna v. Holder*, 559 Fed. App'x 234, 236-37 (4th Cir. 2014) (citing *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999)). A prior claim precludes a later one if three conditions are satisfied: (1) the prior judgment was final and on the merits; (2) the parties are identical, or in privity, in the two actions; and, (3) the claims in the new matter are based upon the same transaction or series of transactions as the claim resolved by the prior judgement. *Id.*

By virtue of Judge Eagles' Order dismissing the SOX Complaint, which was affirmed on appeal, the SOX Case has been finally adjudicated on the merits. "Unless the dismissal order states otherwise, [an involuntary dismissal] except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 [] operates as an adjudication on the merits." Fed. R. Civ. P. 41(b). This includes judgments on the pleadings pursuant to Fed. R. Civ. P. 12(c). *See Chandler v. Forsyth Tech. Comm. Coll.*,

11

294 F.Supp.3d 445, 452 (M.D.N.C. 2018) (citing 5C Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1372 (3d ed. 2017) ("A grant of a motion under Federal Rule 12(c) for judgment on the pleadings constitutes a final judgment on the merits of the controversy within the meaning of Rule 54.")). Likewise, by virtue of Judge Eagles' Orders dismissing with prejudice all of Plaintiff's claims in the Title VII Case, which Plaintiff did not appeal, the Title VII Case also has been finally adjudicated on the merits. *See* Fed. R. Civ. P. 41(b); *Chandler, supra*.

Because all of the claims asserted in the First Amended Complaint are based on the same alleged actions involved in the SOX Case and the Title VII Case, between the same parties, and that this Court previously dismissed in final judgments on the merits, those claims are barred by the doctrine of res judicata. *Id*. And, to the extent Plaintiff may argue that the First Amended Complaint asserts claims he did not raise in the SOX Case or the Title VII Case, any such claims arise out of the same core of operative facts and could, and should, have been brought in those lawsuits; therefore, those claims also are barred by res judicata. *Serna*, 559 Fed. App'x at 238-39. Thus, when Plaintiff filed his Complaint and First Amended Complaint, he knew or should have known that his claims are not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law -- warranting sanctions under Rule 11(b)(2)

As referenced both in Defendants' August 14 letter and the Motion for Sanctions they served on Plaintiff, when presented with similar circumstances, federal courts in

12

51788373v.1

Case 1:18-cv-00491-CCE-LPA   Document 26   Filed 11/06/18   Page 12 of 20

North Carolina and around the country have imposed the same or harsher sanctions than Defendants now seek. For example, in *Harr v. State*, the plaintiff's first action against certain of the defendants was dismissed for failure to state a claim and that dismissal was upheld on appeal. Plaintiff then brought "essentially identical claims" against those same defendants, among others. This Court entered an order stating that the defendants need not respond to any future pleading or complaint filed by the plaintiff as to those defendants for which the operative facts related to events set forth in either the first or second complaint. *Harr v. State*, No. 1:13-cv-00673-CCE-JLW, 2014 WL 2212169, at *6-10 (M.D.N.C. May 28, 2014), *aff'd* 558 Fed. App'x 285 (4th Cir. 2014), *cert denied* 136 S.Ct. 326 (2015). Similarly, in *Sanders v. Tyco Electronics Corp.*, the court enjoined the pro se plaintiff from suing the defendant after concluding that plaintiff's lawsuit was barred by res judicata and instituted for the purpose of harassing the defendant. *Sanders v. Tyco Electronics Corp.,* 235 F.R.D. 315, 324-25 (W.D.N.C. 2006). And, in *Parrish v. Journigan*, the court ordered the pro se plaintiff to pay all of the defendant's attorney fees after observing that the plaintiff had "filed essentially the same lawsuit" previously and that "[t]he defendants have been forced to expend considerable time and money defending a lawsuit which the Fourth Circuit conclusively resolved against the plaintiff." *Parrish v. Journigan,* No. 90–280–CIV–5–BO, 1990 WL 276732, at *2 (E.D.N.C. Aug. 17, 1990).[8]

---

[8] A copy of this opinion is included in Exhibit C to this Memorandum.

51788373v.1

The Courts of Appeals also have routinely upheld Rule 11 sanctions in cases where, as here, a pro se litigant is put on notice that his claims are barred by res judicata but refuses to withdraw his complaint. For example, in *Ginther v. Provident Life & Cas. Ins. Co.*, the Second Circuit upheld an award of sanctions against a pro se plaintiff who had "been correctly informed . . . that his claims in this action were barred by res judicata" and who "nevertheless renewed the same substantive claims in a dilatory motion . . . ." *Ginther v. Provident Life & Cas. Ins. Co.,* 350 F. App'x 494, 496 (2d Cir. 2009). Following similar reasoning, in *Fermin v. National Home Life Assurance Co.*, the Fifth Circuit upheld a sanctions award of $5,924.04 after noting that "[plaintiff's] persistence in litigating this lawsuit, even after he was put on notice that res judicata barred his lawsuit, clearly violates Rule 11." *Fermin v. National Home Life Assurance Co.,* No. 93-8645, 1994 WL 24922, at *2 (5th Cir. Jan. 14, 1994).[9] And, in *Patterson v. Aiken*, the Eleventh Circuit upheld an award of $4,947 in attorney's fees against a pro se litigant on the grounds that his claim was "a 're-hash' of claims made in prior litigation and . . . that '[a] man of [plaintiff's] education, given a reasonable amount of time in a law library, could determine that once a judgment has been entered one cannot file another lawsuit to object to the conduct of the first.'" *Patterson v. Aiken* 841 F.2d 386, 387 (11th Cir. 1998).

This Court's rulings in the SOX Case and the Title VII Case established as a matter of law that Plaintiff's allegations of discrimination, harassment, retaliation, intentional

---

[9] A copy of this opinion is included in Exhibit C to this Memorandum.

14

51788373v.1

Case 1:18-cv-00491-CCE-LPA   Document 26   Filed 11/06/18   Page 14 of 20

infliction of emotional distress, and hostile work environment leading to constructive discharge are not actionable. Having forced Defendants to re-litigate claims this Court already has rejected twice, Plaintiff's conduct warrants sanctions under Rule 11(b)(2).

## II. Defendants Request the Strongest Possible Sanctions to Deter Further Repetition of Plaintiff's Baseless Litigation Against Them.

Over the course of three separate but duplicative actions against Defendants, in addition to bringing baseless claims against the Defendants, Plaintiff has engaged in an ongoing pattern of unfounded attacks on the integrity of counsel and the Court. With no justification whatsoever, Plaintiff has repeatedly accused Defendants and their counsel of diversion and omission of relevant details, providing false information to the Court and a federal agency, and engaging in perjury. (*See, e.g.*, Ex. B; Title VII Doc. 52 at 24.) Plaintiff has even gone so far as to assert, without any factual basis, that Walter Kidde committed perjury with the knowledge of and facilitated by counsel. (Ex. B.)

In his recent Motion to Transfer Venue, Plaintiff boldly accused District Judge Eagles and Magistrate Judge Auld (who presided over the SOX Case and the Title VII Case) of "prejudiced [sic] against the Plaintiff," "blatant disregard for United States Supreme Court instructions," and "egregious and tyrannical behaviors" in the SOX Case and the Title VII Case. (Doc. No. 8 at 1.) Plaintiff further asserted that "this Court under the most suspicious of circumstances is responsible for running afoul of rulings and

15

instructions by the Supreme Court" and questioned the "Court's ability of treating the Plaintiff impartially and without bias." (Doc. No. 9 at 1.)

Plaintiff's claims of misconduct and prejudice stem not from any actual misconduct by counsel or the Court but, rather, from his own fundamental lack of understanding of the civil litigation process and his disappointment with the Court's well-reasoned dismissal of his two previous lawsuits against Walter Kidde. Plaintiff's allegations of misconduct are particularly misplaced given his own conduct during the Title VII Case, during which he admitted cursing at counsel for Walter Kidde, making abusive and impliedly threatening remarks, and mocking counsel's reasonable objections to such language, all of which resulted in the Court ordering that his deposition be conducted before the Magistrate Judge. (Title VII Doc. 40 at 3-5, 15.)

It also is clear that monetary sanctions alone are insufficient to deter Plaintiff's conduct. On December 154, 2017, the Court awarded Defendants expenses of $2,350 incurred in responding to Plaintiff's failed motion to compel (*See* Title VII Doc. 47 at 9-11; Title VII Text Order, December 14, 2017.) And, after dismissing Plaintiff's claims in the Title VII Case, on May 3, 2018, the Court taxed costs against Plaintiff in the amount of $1,535.75. (Title VII Doc. 67.) To date, Plaintiff has not remitted payment of either of these awards.

Accordingly, Defendants respectfully request that the Court fashion an appropriate remedy "to deter repetition" of Plaintiff's conduct, to include assessing attorneys' fees and costs against Plaintiff and enjoining Plaintiff from pursuing any other claims against

16

Defendants based on the events described in the Complaint, the First Amended Complaint, the SOX Complaint, or the Title VII Complaint. Fed. R. Civ. P. 11(c)(4).

Such relief has been deemed appropriate in cases involving pro se litigants who file multiple suits based on the same facts. The *Sanders* case provides further guidance in this regard. There, the court enjoined a pro se plaintiff from bringing claims "pertaining to or relating to any allegations or legal claims made in [two prior lawsuits]" after concluding that plaintiff's suit was barred by res judicata. *Sanders*, 235 F.R.D. at 324-25. The court's order also threatened plaintiff with a $1000 fine for violating this injunction. *Id.* at 325. Looking to the deterrent role of sanctions, the court observed that "the primary purpose of sanctioning the Plaintiff, whether pursuant to Rule 11 or inherent powers, is to prevent her from suing this Defendant again." *Id.* at 324.

Similarly, in *Dean v. ARA Environmental Services, Inc.*, the court found that a pro se plaintiff's "repetitive filing of frivolous lawsuits" against his former employer warranted an injunction to prevent plaintiff from filing suit based on the six-week period during which he had been employed by the defendant. 124 F.R.D. 224, 227 (N.D. Ga. 1988). Although the court noted that the plaintiff "cannot be completely foreclosed from any access to the court," it found the prevention of repeat lawsuits based on the same underlying events to be an appropriate remedy. *Id.*

Other courts have gone even further, imposing "pre-filing review" requirements on pro se litigants who have abused the court system. *See, e.g., Fariello v. Campbell*, 860 F. Supp. 54, 71 (E.D.N.Y. 1994) ("Such pre-filing review allows a court to screen a proposed

17

51788373v.1

Case 1:18-cv-00491-CCE-LPA   Document 26   Filed 11/06/18   Page 17 of 20

newly-filed action by the pro-se litigant, in order to determine whether it is an attempt at filing another vexatious complaint or a complaint with an arguably objectively reasonable basis.").

The most stringent sanctions are justified in this case because Plaintiff has demonstrated that he will not relent in his baseless claims against Defendants and his unfounded attacks on the integrity of counsel and the Court -- even after his claims have been rejected twice.

## **CONCLUSION**

Through his First Amended Complaint, which asserts claims essentially identical to those this Court rejected in his two previous cases against Walter Kidde, Plaintiff has pursued claims and contentions that he knew or should have known are not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law. Therefore, the Court should assess attorneys' fees and costs against Plaintiff, enjoin Plaintiff from pursuing any other claims against Defendants based on the events described in the Complaint, the First Amended Complaint, the SOX Complaint, or the Title VII Complaint (in whatever manner the Court deems sufficient to deter repetition of such conduct), and award such other and further relief as the Court deems just and proper.

Respectfully submitted,

SEYFARTH SHAW LLP

By: s/ *Frederick T. Smith*
    Frederick T. Smith
    North Carolina Bar No. 45229
    SEYFARTH SHAW LLP
    6000 Fairview Road, Suite 1200
    Charlotte, North Carolina 28210
    Telephone: (404) 885-1500
    Facsimile: (404) 892-7056

    Benjamin D. Briggs
    Georgia Bar No. 081902
    bbriggs@seyfarth.com
    Thomas G. Reynolds IV
    Georgia Bar No. 601898
    treynolds@seyfarth.com
    SEYFARTH SHAW LLP
    1075 Peachtree Street, N.E., Suite 2500
    Atlanta, Georgia 30309-3958
    Telephone: (404) 885-1500
    Facsimile: (404) 892-7056

*Counsel for Defendants*
*United Technologies Corporation and*
Date: November 6, 2018    *Walter Kidde Portable Equipment, Inc.*

## **WORD COUNT CERTIFICATION**

This brief, submitted in 13 point Times New Roman type, contains fewer than 6,250 words, including the body, headings, and footnotes. (Word count: 4,718)

            s/ *Frederick T. Smith*
            Frederick T. Smith
            Counsel for Defendants

19

51788373v.1

Case 1:18-cv-00491-CCE-LPA   Document 26   Filed 11/06/18   Page 19 of 20

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA
# GREENSBORO DIVISION

JONATHAN R. BURRS,

    Plaintiff,

v().

UNITED TECHNOLOGIES CORPORATION, and WALTER KIDDE PORTABLE EQUIPMENT, INC.,

    Defendants.

Case No. 1:18-cv-00491-CCE-LPA

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2018, the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS FOR PLAINTIFF'S VIOLATION OF RULE 11(b)(2) AS TO HIS COMPLAINT** was served on Plaintiff by overnight courier and electronic means addressed to the following:

> Jonathan R. Burrs, *pro se Plaintiff*
> 118 Pangborn Boulevard
> Hagerstown, Maryland 21740
> Jburrs1715@aol.com

> *s/ Thomas G. Reynolds IV*
> Counsel for Defendants
> United Technologies Corporation and
> Walter Kidde Portable Equipment, Inc.